IN THE MATTER OF THE ELECTION OF DIRECTORS OF THE MUTUAL FIRE INSURANCE COMPANY OF ALBANY; JAMES B. LYON et al., Petitioners, Appellants, v. JOHN F. RATHBONE et al., Respondents.

MUTUAL FIRE INSURANCE COMPANY — CASH POLICYHOLDERS ENTITLED TO VOTE AT ELECTION OF DIRECTORS. Holders of policies in a mutual fire insurance company, organized under chapter 239 of the Laws of 1836, as amended by chapter 47 of the Laws of 1848, who have paid a certain definite sum of money in full for insurance therein, in lieu and in place of a premium note therefor, are as fully and effectively insured as those

who have given a premium note for insurance and are members of the company and entitled to vote at any election of its directors equally with note policyholders.

*Matter of Mutual Fire Ins. Co.*, 51 App. Div. 163, modified.

Argued June 8, 1900; decided October 2, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 15, 1900, reversing an order of Special Term which established the election of appellants, hereafter called the Lyon board, as directors of the Mutual Fire Insurance Company of Albany for the year 1900, and establishing the election of respondents, hereafter known as the Rathbone board, as directors of the company for that year.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Lewis E. Carr, Robert G. Scherer, J. Murray Downs* and *N. F. Towner* for appellants. The order of the Appellate Division is appealable and may be here reviewed. (Code Civ. Pro. §§ 190, 3333, 3334; *Matter of Argus Co.*, 138 N. Y. 557; *Matter of Taxpayers, etc.*, 157 N. Y. 78; *People ex rel. Feeney* v. *Bd. of Canvassers*, 156 N. Y. 43; *Peri* v. *N. Y. C. & H. R. R. R. Co.*, 152 N. Y. 521; *Matter of Talmage*, 160 N. Y. 512; *Moulton* v. *Cornish*, 138 N. Y. 133; *Matter of Hulbert Bros. & Co.*, 160 N. Y. 9.) The reversal of the Special Term order was not on the facts, and the review of the Appellate Division order here is not hampered or limited by that consideration. (*Wetmore* v. *Wetmore*, 162 N. Y. 503; *Pringle* v. *L. I. R. R. Co.*, 157 N. Y. 100; *Koehler* v. *Hughes*, 148 N. Y. 507; *Buell* v. *Van Camp*, 119 N. Y. 160; *Murphy* v. *Jack*, 142 N. Y. 215; *Tim* v. *Smith*, 93 N. Y. 91.) The order was not one resting in discretion, but was the determination of matters of legal right. (*Matter of Argus Co.*, 138 N. Y. 557; *Matter of U. Ins. Co.*, 22 Wend. 591; *Matter of P. P. Co.*, 36 How. Pr. 105.) Cash policyholders are members of this company and entitled, equally with note policyholders, to vote for directors of the

company. (*Mygatt* v. *N. Y. P. Ins. Co.*, 21 N. Y. 52;
*White* v. *Havens*, 4 Abb. Ct. App. Dec. 582; *U. Ins. Co.* v.
*Hoge*, 21 How. Pr. 35; *Raegener* v. *Willard*, 44 App. Div.
41; *Schimpf* v. *L. V. M. Ins. Co.*, 86 Penn. St. 373; *Spruance*
v. *F. & M. Ins. Co.*, 9 Col. 73; *Rundell* v. *Keenan*, 79
Wis. 492; *Davis* v. *Parcher*, 82 Wis. 488.) The custom
of the company does not control the statute or vary the rule
applicable to such corporations. (*Kent* v. *Q. M. Co.*, 78 N.
Y. 159; *Boardman* v. *L. S. & M. S. R. R. Co.*, 84 N. Y.
157; *Woodruff* v. *Merchants' Bank*, 25 Wend. 673; *Wadley*
v. *Davis*, 63 Barb. 500; *Bowen* v. *Newell*, 8 N. Y. 190;
*Wheeler* v. *Newbould*, 16 N. Y. 392; *Higgins* v. *Moore*, 34
N. Y. 417; *Colgate* v. *Penn. Co.*, 102 N. Y. 120; *Herman*
v. *N. F. Ins. Co.*, 100 N. Y. 412; *Ransom* v. *Masten*, 4
N. Y. Supp. 781.) The Special Term had jurisdiction to
establish the election. (*Matter of Argus Co.*, 138 N. Y. 557;
*Matter of U. Ins. Co.*, 22 Wend. 591; *Vandenberg* v. *B.
Ry. Co.*, 29 Hun, 348; *Matter of E. Ins. Co.*, 38 Barb. 297;
*Matter of G. S. Co.*, 17 App. Div. 234; *Matter of S. L. S.
Co.*, 44 N. J. L. 529; *Matter of C. M. Co.*, 51 N. J. L. 78.)
Having the power to count the cash policy votes cast for the
petitioners, it was the duty of the court to establish the elec-
tion on that basis and declare the petitioners elected. (L.
1836, ch. 239; *Smith* v. *Procter*, 130 N. Y. 319; *Matter of
U. Ins. Co.*, 22 Wend. 599; *Matter of P. P. Co.*, 36 How.
Pr. 105; *Matter of R. T. F. Co.*, 15 App. Div. 530; *Lyon*
v. *Richmond*, 2 Johns. Ch. 51; *Weed* v. *Weed*, 94 N. Y. 243.)

*Marcus T. Hun* and *Learned Hand* for respondents. The
appeal from the order of reversal should be dismissed for lack
of jurisdiction. (*H. R. T. Co.* v. *W. T. & R. R. Co.*, 121
N. Y. 397; *Caston* v. *Dupe*, 145 N. Y. 250; *Schneider* v.
*City of Brooklyn*, 155 N. Y. 623; *People ex rel.* v. *Lord*,
157 N. Y. 408; *People ex rel.* v. *Maynard*, 160 N. Y. 453;
*Matter of Baer*, 147 N. Y. 355; *White* v. *Benjamin*, 140 N.
Y. 268; *People ex rel.* v. *Van Wyck*, 157 N. Y. 495; *Peo-
ple ex rel.* v. *Bd. of Education*, 158 N. Y. 125; *Matter of*

*Hart*, 159 N. Y. 278.) The court at Special Term erred while counting the cash policy votes of those voting in favor of the petitioners, in not counting the cash policy votes of those voting in favor of the Rathbone board of directors. (*Morris* v. *Beves*, L. R. [1 Q. B. 1897] 456.) The order granted in this case at the Special Term was erroneous, even assuming that the court was correct in its decision, that the cash policyholders were entitled to vote at the election, and that the policyholders voting for the Rathbone ticket did not cast their cash votes. A new election should have been ordered. (*Matter of L. I. R. R. Co.*, 19 Wend. 37 ; *People* v. *Phillips*, 1 Den. 388 ; *State* v. *McDaniel*, 22 Ohio St. 369 ; *Strong* v. *Smith*, 15 Hun, 222 ; *People ex rel.* v. *Simonson*, 61 Hun, 388 ; *Cohen* v. *N. Y. M. Ins. Co.*, 50 N. Y. 610 ; *Greeff* v. *E. L. Assur. Society*, 160 N. Y. 19.) The cash policyholders had no right to vote. (L. 1836, ch. 239 ; L. 1836, ch. 41 ; *Mygatt* v. *N. Y. P. Ins. Co.*, 21 N. Y. 53 ; *Power* v. *Vil. of Athens*, 99 N. Y. 592 ; *Mayor, etc.*, v. *Starin*, 106 N. Y. 1 ; *Matter of Breslin*, 45 Hun, 210 ; *Meriam* v. *Harsen*, 2 Barb. Ch. 232 ; *McKean* v. *Delancy*, 5 Cranch, 22 ; *Bank of Utica* v. *Mesereau*, 3 Barb. Ch. 528 ; *Fort* v. *Burch*, 6 Barb. 60 ; *People ex rel.* v. *Comrs. of Taxes*, 6 Hun, 109 ; *Easton* v. *Pickersgill*, 55 N. Y. 510.)

HAIGHT, J.  This proceeding was instituted under section 27 of the General Corporation Law, 1892, chapter 687, which empowers the Supreme Court, upon the application of any person complaining of any election of any corporation, forthwith and in a summary way to hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matters or causes of complaint and establish the election, or order a new election, or make such order or give such relief as right and justice may require.

The annual election of directors of the company took place on the 22d day of January, 1900. At that election the inspectors reported that the Lyon board received 1,112 votes which were cast upon note policies, so called, and the Rath-

bone board received 1,347 votes upon like policies, and, there-upon, they declared the Rathbone board elected. It appeared, however, that 895 votes in favor of the Lyon board were tendered upon cash policies, which were rejected by the inspectors upon the ground that cash policyholders were not entitled to vote. The court at Special Term held that cash policyholders were entitled to vote, and that, consequently, the Lyon board received 2,007 votes, and, therefore, adjudged that board elected. The Appellate Division reversed the order of the Special Term, holding that if the cash policy-holders were entitled to vote, then the persons voting for the Rathbone board, holding such policies, should also be counted, and that the number of such votes amounted to 720, which would still leave the Rathbone board in the majority, and, therefore, it declared that board elected. The first and the important question raised for our determination is whether the cash policyholders are entitled to vote.

The Mutual Fire Insurance Company of Albany was organ-ized by chapter 239 of the Laws of 1836. That act named certain persons and declared them a corporation by the name stated, and then provided, by section 3, that "The corpora-tion hereby created shall possess all the powers and privileges and be subjected to all the restrictions and limitations which are granted to, or imposed upon the Jefferson County Mutual Insurance Company by the act incorporating that company." (Chapter 41, Laws of 1836.) That act, among other things, provided that "all persons who shall hereinafter insure with the said corporation  *  *  *  shall thereby *become members* thereof during the period they shall remain insured by said corporation and no longer." Other provisions of the act give the management of the affairs of the company to a board of directors, to be annually elected by *the members* of the com-pany, each member having one vote for each hundred dollars insured in the company, and every person becoming a mem-ber by effecting insurance shall be required to deposit his promissory note with the company in such amount as the directors should determine, payable at any time when the

directors shall deem the same requisite, for the payment of losses sustained by fires, etc.　The Mutual Fire Insurance Company of Albany, having been thus organized, commenced business and has ever since conducted an insurance business in the city of Albany under the provisions of its charter.　In 1848, by chapter 47, its charter was amended so as to provide that it shall be lawful for any person applying for insurance in the company, at his election, to pay the company a certain definite sum of money in full for such insurance, which sum shall be in lieu and in place of a premium note, and such person shall not be liable to the company during the continuance of his policy beyond the amount thus paid.　It was further provided that the money so paid to the company should be retained as a fund for the payment of losses and expenses which may happen; that it should be exhausted before resort should be had to an assessment upon the premium notes deposited with the company, and that such fund and premium notes should constitute the capital of the company for the payment of its losses and expenses.　Under this amendment of the charter, the company continued business, issuing what is called cash and note policies at the election of the applicant, and has so continued business until the election in question.

It will be remembered that by the provisions of the original act of incorporation, all persons insuring in the company were made members of the corporation during the period that their insurance continued, and that all members of the corporation were entitled to vote at the election of the directors. The amendment in 1848 has not in any manner changed or modified these provisions.　Prior to that amendment, policies could only be issued upon the receipt of premium notes, and after the amendment policies could be issued upon the payment of a gross sum in cash in lieu of the delivery of the premium notes at the election of the applicant.　In other words, two kinds of insurance were provided for; one, by the delivery of a premium note, and the other by the payment of a gross sum in cash, the notes and the cash becoming

the capital of the company out of which the losses on the policies were to be paid. The holders of cash policies were persons insured in the company as fully and as effectively as persons who held note policies. They were persons insured by the corporation, and under the express provisions of the act were members of the corporation during the period for which they were insured; and as such it appears to us that they were entitled to vote at any election of the company. While the provisions of these acts may not have been considered by the courts as to this question, that of the General Insurance Law of 1849, chapter 308, has been considered in the case of *Mygatt* v. *New York Protection Insurance Company* (21 N. Y. 52). In that case, SELDEN, J., in delivering the opinion of the court, says: "Article 5, among other things, provides as follows: 'The directors shall be elected by the persons holding policies of insurance in this company, or their proxies, and one vote shall be allowed on every one hundred dollars insured;' thus, every person holding a policy issued by the company is made a member of the corporation and entitled to a vote therein, entirely irrespective of the question whether the premium upon such policy was paid in money or by a premium note." It is true that this position is combated in the dissenting opinion of DENIO, J., but the majority of the court was with SELDEN, and the decision in that case, we think, should be regarded as a controlling precedent in this. In *White* v. *Havens* (4 Abbott's Court of Appeals Decisions, 582) the decision in the *Mygatt* case was followed, WRIGHT, J., saying: "The cash policyholders were members of the corporation as much as were the holders of policies based on a premium note. They were contributors to a common fund as the capital of the company to meet losses that might occur. They paid their premium in cash instead of notes or promises to pay." And to the same effect is *The Union Insurance Company* v. *Hoge* (21 Howard [U. S.], 35). We, consequently, are of the opinion that those composing the Lyon board have the right to have the votes cast in their favor by the cash policyholders counted.

The Appellate Division, as we have seen, has reached the conclusion that, notwithstanding the counting of the votes upon cash policies in favor of the Lyon board, the Rathbone board was properly elected. This result is reached by adding to the votes cast for the Rathbone board 720 votes which might have been voted upon cash policies held by such voters. The Appellate Division appears to differ somewhat with the court at Special Term as to the facts in this regard. We have no jurisdiction to review controverted questions of fact. There is one, however, about which there is no controversy. There were no votes tendered for the Rathbone board on election day upon cash policies. It is doubtless true that the voters did not suppose they were entitled to vote upon such policies. In all of the elections that have preceded votes upon note policies only had been received. We, however, agree with the Appellate Division that it would be quite unjust and unfair to deprive these persons of their votes upon cash policies under the circumstances disclosed in this case. We are not, however, prepared to sustain the conclusion that they were entitled to 720 votes. It is said that Daniel Leonard was entitled to 262 cash votes. The affidavit supporting this claim was made by his son, in which he states that if cash votes can be counted, the number of votes which his father is entitled to cast, " either personally or as an officer of a corporation insuring in said company, is 262 cash votes." It will be observed that he does not state the number of votes that his father was entitled to cast personally. He does not state the number that he was entitled to cast as an officer of the corporation. The name of the corporation is not given or the office therein that was held by his father. We think this is too vague and indefinite to become the basis of a determination of so important a question of fact by an appellate court.

We have concluded that, under the circumstances presented by the record, the order of the Appellate Division should be modified by striking out that portion of the order which establishes the election of the Rathbone board, and that instead

3

thereof a new election should be ordered upon the statutory notice of thirty days, the notice to be given within ten days after the entry of this order, and, as so modified, the order of the Appellate Division should be affirmed, but without costs of this appeal to either party.

PARKER, Ch. J., O'BRIEN, BARTLETT, VANN, LANDON and CULLEN, JJ., concur.

Ordered accordingly.